Good morning, and thank you everyone for mastering technology with the help of our IT staff to hear this argument today. And we're ready to hear argument in the case of Flores v. Barr. Ms. Williams, whenever you're ready. Thank you and good morning, Your Honor. May it please the court. My name is Alexandra Williams, and I, along with Benjamin Osorio, represent the petitioner in this case, Mr. Hernan Alexander Portillo Flores, in his petition for review of the Court of Immigration Appeals decision. Your Honor, this case is about a 14-year-old boy who was threatened, beaten by armed gang members belonging to one of the world's most notorious gangs known for unrelenting violence, torture, and murder. Today, we ask the court to find that Mr. Portillo Flores experienced harm rising to a level of persecution, as defined by the circuit, on account of a protected ground, and that the government of El Salvador is unable or unwilling to protect him. Having found that Mr. Portillo Flores meets the standard, he enjoys a presumption of a well-founded fear of persecution, and indeed has a well-founded fear of persecution. The facts of this case are not in dispute. Mr. Portillo Flores was 13 years old when his sister was threatened with death. Ms. Williams, what's your best argument that the government of El Salvador was unwilling or unable to protect the petitioner? Your Honor, the best argument, I think, is the fact, well, first of all, the IJ didn't take a full analysis of why the government was unwilling or unable, and disregarded, I think, significant portions of the record, which this court has found is error. First of all, even if we find that the government is, for example, willing, I know that the government's brief and the court's below holdings where that effort had been made to curtail gang violence, that may show willingness, but it certainly does not show ableness, that the government would be able, in any case, in any event, to protect the respondent. In fact, the record evidence establishes that, from not only a State Department report, but from the articles, and then a DHS report itself, shows that there's corruption, there's impunity, there's weak rule of law, there's a conviction rate of just 3%. So, even if we look at the factors that show that they're willing to, they're not able to. But I think the most important issue here— I was on mute, I apologize. Y'all are handling technology better than I am, so sorry about that. But I'm on the same point, counsel. First of all, do you agree that you need to show that the government was unable or unwilling to control the gang issues, the persecution? You have to show that in addition to actual persecution on account of a particular social group, in addition to those other two items to obtain the presumption. Isn't that correct? That's correct, Your Honor. That's from the regulations. Okay. And then, sticking on that third issue for a while, is our standard of review for that issue manifestly contrary to law, or whether there's substantial evidence in the record? On factual matters? On factual matters, the standard of review is a substantial evidence. So, if the substantial evidence supports the agencies listed in this court, can't disturb that. But this is not the case here. Well, let's talk about that, because it looks to me like the immigration judge referred to two things. He referred to the fact that there was no report to the government or to the authorities of this alleged persecution. And the immigration judge referred to evidence in the record that the government was taking measures to address criminal activity and that they were actually arresting and prosecuting gangs. Now, I fully understand there's other evidence in the record to the contrary, and I'm aware of our law, but how is that not something that the immigration judge has authority to look at and rely on, at least as to that third prong? Certainly, Your Honor. And I think the problem is here that we don't actually know what she uses to conduct her analysis. She references generally the exhibits that were submitted by the Department of Homeland Security and generally the exhibits that were submitted by the petitioner in this case, but we don't know what she's pointing to specifically whatsoever. So the statement that the government has put measures – this is the quote from the decision, the statement – the government has put measures into place to address criminal activity and has arrested some gang members doesn't speak to whether they've been convicted, doesn't speak to whether the government has been continuing this process, and doesn't speak to whether the government – which the government has itself acknowledged that they've negotiated with the gangs. I think another critical error was that even though she stated he did not report – this was at the administrative record at 88 – he did not report any of the threats or beatings that he received to the police, she fails to address his own testimony and testimony from his sister and the expert report stating that if you go to the police, you make things worse. He had a specific instance where a friend of his went to the police after being extorted by gangs and then he was found dead. There was common knowledge in the neighborhood that if you went to the police, they wouldn't do anything. And then the expert report said itself that they were filing a police report makes things worse. The IJ is not entitled to ignore that relevant, unrebutted, substantial evidence. And what about the fact that's testified to here and found credible by the IJ that the police went to the mother's house with gang members sort of lurking in the background? Doesn't that cut against the government's argument here about the protection of the – go ahead. Yes, it absolutely does. Circumstantially, at the very least. But I think there was also direct evidence that gangs work with police. In this case, it was local police. And I think that does cut against the argument that even if a police officer came, they weren't actually going to do anything. But on that same point, I mean, I certainly – I think the evidence Judge Thacker talks about, you know, I certainly understand how the petitioner would use that to address the issue about whether the government was unwilling or able. But from my review of that record testimony, it looked like, I mean, that, you know, that the gang members were standing away. You know, one could certainly view that if you're the fact finder is that they were in cahoots or one could view it as that they were observing. And I'm just trying to figure out why – you may have the better end of the argument, and I might have, if I was there, decided differently how the immigration judge who heard this all firsthand wasn't able to look at that and make the determination that she did. Now, I grant you the opinion is not a model of thoroughness, but is it enough, you know, in there given the standard of review that we have to apply? Certainly, Your Honor. And I just – I do want to point out that the standard of review is not if there was some evidence that pointed that direction. It's looking at the record evidence as a whole. And as a whole, she failed to look at all the pieces of evidence here that pointed in the other direction. Even if you go into the nitty-gritty details of the exhibits that she cited, maybe some of the pages, the pages themselves don't even reference – actually, there's only one State Department report that's referenced, and the rest are articles. It's just wholly insufficient to support a finding of the government's ableness to protect their petitioner in this case. Can I ask another question? I'm sorry to interrupt, but this is something that goes to the issue that you point about, about the death threats.  And this, I think, goes to the issue about whether there was past persecution. And I'd like for you to address two points, because I – if – are you aware of a Fourth Circuit case, at least, where we have held that death threats constitute persecution when the death threats were not made to the petitioner? They were made to someone else, number one. And number two, he was not – he or she was not aware of them until after he left the country. Are there – first of all, are there any cases where those facts exist that support your position, if you could tell me those cases? And second, if you could address just – even if that's just your argument about how they create persecution in the – in those contexts. I don't doubt that they would go to the future – the fear of future persecution, but I'm trying to see how they go to the issue of past persecution. Certainly, Your Honor. I'm not aware, without anything more, that a death threat to a family member, all by itself, with no other evidence of anything else in the Fourth Circuit, would be part of persecution. But in the Beharin v. Holder case, the Fourth Circuit case from 2009, it does state that we have to look at the cumulative effect in the persecution analysis. In that case, there were violent – or rather, there were threats to close relatives, and the court held that that was an incredibly important factor in deciding whether the mistreatment syncs to the level of persecution. I do want to draw the court's attention – I know the question was about Fourth Circuit cases, but in Hernández Ortiz v. González – this is a Ninth Circuit case from 2007 – the petitioners there were seven and nine. They experienced no physical harm whatsoever. Their father was beaten. Their brother was killed. They did not actually know of that happening until they left the country, and the court there found that injuries to the family had to be considered in the asylum case context, where there was past persecution. Yes, Your Honor. I'm sorry, I may be getting off track here, but haven't we previously held in Beharin that harm inflicted on family members should be taken into account in conjunction with direct harm? Yes, Your Honor, absolutely. That case specifically said that family members – harm to family members – I think it's a direct quote – has to be considered when deciding mistreatment and whether it syncs to the level of persecution. Absolutely. In that case, was the awareness something that took place contemporaneous while the petitioner was still in his home country, or was it information about harm to a relative that he learned about after he left the country? And does that matter? In the Beharin case, I believe it was not directly contemporaneous, but it was after some harm occurred to him. In the Hernandez-Ortiz case, the Ninth Circuit case, that was after. And the important factor there is that it occurred after they left the country, and they were still children when they learned of the persecution. And so, I think the court – here, what we want the court to find is that Mr. Portillo-Flores experienced past persecution on account of objective grounds, and that the government of El Salvador is unable and unwilling to protect him. And if there's no further questions, I'll reserve the rest of my time for rebuttal. All right, thank you. Thank you very much. And now we'll hear from counsel for the respondent, the government. Good afternoon, Your Honors. Sarah Fergalisi for the government, and may it please the court. Can you all hear me okay? Yes. Okay, good. The court here should deny this petition for review on the sole basis – the dispositive basis that the petitioner has failed to establish that the government is unable and unwilling to protect him. As the judges have properly elucidated during questioning of the petitioner today – Wait, so are you conceding the first two, the other grounds? Oh, no, Your Honor. It's just that this unable and unwilling issue is dispositive of both asylum and withholding, and therefore the court need not reach the other grounds. Okay, but what if I don't agree with you on the issue that the government was unwilling and unable to protect him? What's your argument then? If you don't agree about the unwilling and unable, that is the only issue that we've briefed that's dispositive of both the asylum and withholding cases. The case should go back on remand for the court to decide nexus with the benefit of the intervening case law from the Attorney General. I'm sorry, are you saying that you – are you conceding the argument that I thought you made on appeal that there was not substantial evidence of past persecution? Are you conceding that issue? No, I'm not, Your Honor. I may be wrong, but I think that's what Judge Thacker's asking you to address. I don't want to speak for her, but I want to hear about that too. Absolutely. My apologies, Judge Thacker, if that's what you were asking about. It's just that the unable and unwilling element is dispositive both of the past harm and the future harm. And so it's dispositive of the whole claim, but the past persecution finding, we're still advocating that you agree that Portillo did not experience past persecution. But if you only agreed on that and not unable and unwilling, that's not a clear – that wouldn't be the end of the petitioner's claim because he could still establish that he feared future harm. And so that issue wouldn't be dispositive of the whole claim. If I may address the unable and unwilling factor first, just because it seems the court was concerned in asking questions. I actually think, and I don't want to speak for Judge Quattrobon either, but I actually think that both he and I just expressed that we would like to hear the other arguments. I'm sorry. Sure, of course. I would. Just to note, I'm also not aware of any Fourth Circuit law in which an indirect threat alone constitutes past persecution. And I think the court's case law regarding direct threat is relevant in determining whether this harm rises to the level of persecution and whether substantial evidence supports the immigration judge's conclusion in this case. I'd like to point the court to the case, the Tyreux case, in which the petitioner was cornered by 50 other people, detained for five hours. He was only slapped and had his ears pulled, but he received direct death threats during that detention by family members. And the court found that the agency improperly only focused on the level of harm that the petitioner suffered and should have also looked at the threats. What about the fact here that the petitioner was beaten three to four times, and at least on the last time said he thought he was going to die, and the IJ found his testimony to be credible? That's all true. At the same time, this court has held that what persecution is is a high standard. It's an extreme concept. And the issue in this case is just a dearth of specificity. The petitioner didn't testify what kind of injuries he sustained, and therefore the immigration judge was left unable to determine whether or not the harm he experienced rises to that extreme level. And considering that lack of specificity, the immigration judge is finding that that harm did not rise to the level, considering that the petitioner... Didn't his mother and he both testify that he was beaten and bruised and cut? Yes. I mean, abrasions, not necessarily cut with a knife, but cut. So that is some indication of the injuries he sustained. And I have a question on that. There's some argument in the record about requiring medical attention. Where is there any support for the fact that requiring medical attention is necessary? There's no support for that contention. Our position, the government's position, is that the immigration judge did not require medical attention, but rather saw the lack of medical attention as a fact that was relevant but not necessarily sufficient of showing that the extent of the petitioner's injuries did not meet the high standard for persecution that this court has elucidated. So following up on that, that's a question I had, too. There's a suggestion that the immigration judge set a standard that medical treatment is required in order to show past persecution. And once again, the opinion could be perhaps a little bit more clear or a little bit more robust. But is it your position that that's not a legal standard that the judge considered, but a fact that the judge weighed on the one hand, along with the other facts, such as the testimony about him being bruised and having those types of injuries on the other? That's exactly our position, Judge. And we glean that position both from the language of the immigration judge's decision, the oral decision, but also the statutory and legal addendum that are attached. And again, the decision is not super thorough, but those decisions in the legal addendum, there's no claim by the immigration judge that an applicant is required to seek medical attention for his harm to constitute past persecution. If I could go back to a question that Judge Thacker asked, and that is that immigration did find the petitioner credible. And the petitioner did say he thought he was going to die or something to that effect. What are we to do with that? Does a finding of credibility mean we have to assume that every word was literally correct or that his testimony was overall credible? What do we do with those two things? Because if – I mean, I think if we were to conclude that the beatings were to the point that he was about to die, it would be hard to say that's not severe enough to equal persecution. But if – and does the finding of credibility mean we have to take that lock, stock, and barrel with no exceptions, or are we – or not? That's a great question, Your Honor. A finding of credibility is certainly important in this case, and the petitioner was found credible. But his subjective beliefs of the extent of his injuries, the immigration judge did not need to take as persuasive, and this court need not find as compelling evidence of the contrary conclusion that the immigration judge found. What's that based on? Why do you – I'm sorry, Judge Thacker. No, go ahead. If you could give me authority on that other than your argument, I would be interested in it. I don't have authority for that exact point, but I would just turn the court to pretty much any published decision on reviewing a past persecution finding. And in those cases, the court is concerned about the direct evidence of the injuries sustained as opposed to the petitioner's subjective beliefs of the severity of those injuries. And I don't have an exact citation on hand, but it's pretty common and well settled in courts of appeals. Well, aren't the petitioner's feelings that he was going to die on the third or fourth beating sufficient to establish that he was threatened? That's a good question, Your Honor, and I hadn't thought about that in that specific vein. It – again, in the court's case, discussing threats, it is about what the alleged persecutor says as opposed to the way that the petitioner interprets what is said. But it could be evidence that supports that contrary conclusion. But I would argue that it's not evidence. Great. So if the gangs just beat people within an inch of their lives, as long as they don't say, I'm going to kill you, then they can get away with it. Good. I have another question. Shouldn't we take into account the fact that the petitioner was only 14 years old at the time in terms of evaluating his level of persecution, as many of our sister circuits have? It's certainly – again, Your Honor, it's relevant, but not just positive. There's no indication in the record from the immigration judge's decision that the immigration judge didn't consider the petitioner's age. And the cases that petitioners have cited in support of their request that a higher standard be imparted for children are certainly relevant, but they discuss petitioners that are far younger than the petitioner was at the time he was harmed. Oh, okay. What age does a minor need to be before their age should be taken into account in these circumstances? 14 is not young enough, apparently. I'm not advocating for a Bright Line rule, Your Honor, at all, and I think that would lead to some absurd results. Well, Bright Line rule is a minor is someone under 18 ordinarily in the law. Are you familiar with the United States Department of Justice guidelines for children's asylum claims? Not explicitly, Your Honor. All right. So let me ask you about something that's quoted there and what your response would be to that. So the guidelines say persecution suffered as a child should be defined more liberally than the standard for adults, as the harm is often more traumatic from their viewpoint. Should we take that into account? Again, I think it's absolutely relevant. But at the same time, it's not it doesn't compel the contrary conclusion that the immigration judge reached. Children, absolutely. I'm not I'm not trying to minimize the harm that children experience or the harm that this petitioner has experienced. And I hope I'm being clear in that regard. However, the petitioner himself did not provide. And I completely understand you're arguing on behalf of the government. This is not, of course, not me personally. But at the same time, what is really critical in these cases is that the applicant bears the burden of proof of establishing that he is eligible for this relief. And in in doing so, he needs to provide details about the harm he experienced so that the agency can properly adjudicate his claim. And here we just have a dearth of specificity. And I would like to remind the court of the standard of review in these cases. This is a tough record and I'm not trying to minimize the harm that this petitioner experienced or the harms that Salvadoran citizens face in their country. But I do wish to remind this court that asylum is not a general protection provision. It protects against a very specific kind of harm for specific reasons and specific levels of severity. And while the record certainly supports two conclusions in this case, that's not sufficient for the petitioner to succeed on the court standard of review, which is substantial evidence. If I could, I want to make sure I understand what you're contesting on appeal and what you're not. I think I understand your past persecution argument and your unable and unwilling response to the government argument. It looks like you have not challenged or not responded to the challenge of the petitioner concerning the nexus of the particular social group. So it looks like you've abandoned or not contesting that. Is that correct? We're not conceding error per se, Your Honor. But we are saying that this court can decide this case on the narrow terms of the dispositive, unable, and willing issue. And if the court agrees on that, then the agency's decision is lacking in analysis under its own precedent and this court's. Yeah, but you've basically abandoned, it looks to me, that issue. I mean, I paid close attention and there's AG's opinions that I thought we were going to have a big, juicy discussion on that. But, you know, it looks like you're not pursuing those here. And it looks like also you're not pursuing from your brief the issue of whether if we find that the petitioner established sufficiently past persecution, the particular social group nexus, and the unwilling and able, that the government has met its burden on either change of circumstances or relocation. I didn't see those issues addressed. So it seems like your argument is focused on the first issue of past persecution and really the first and third issues in that analysis. Am I right? That's correct, Your Honor. Okay, thank you. With respect to LEA, and I understand the desire to address that juicy issue, but it just isn't properly at hand in this case. The board decided the decision in this case before the new attorney general's decision came out. And so a challenge to that decision is inappropriate here. Now, look, I'm not complaining. I'm just making sure I know what we're dealing with. If the court has no further questions on the past persecution or unable or unwilling, I'd just like to very quickly turn to the issue of cap protection. Since we haven't mentioned that at all today, I just wanted, again, for very similar reasons, this record is a tough one in that both conclusions, the conclusion that the immigration judge came to and the conclusions that the petitioner advocate have support in the record. However, under the standard of substantial evidence review, that's not enough for this case to for this petition to be granted for similar reasons as the unable and willing. But it's obviously acquiescence is not the same standard as unable and unwilling. But for similar reasons, the evidence in the record does not compel the only conclusion that the Salvadoran government or a government official would either actively engage consent or acquiesce to the torture of the petitioner. And if there are no further questions. Let me let me make sure I'm good on that last issue. One second, please. Sure. So on the cat issue, the immigration judge really doesn't say anything about why the burden was not met. We might infer that the issues that she discussed concerning asylum were the issues she relies on for the similar issues. But, you know, that that's not stated. The B.A.I. says a little bit more in talks about all they referenced is belief and not evidence. So two questions. Are we entitled to infer that the district court and the B.I.A. relied on the same issues in the cat decision that were used to decide the asylum and withholding claim? Is that something we can do? I think under the standard of review and considering the totality of both the factual findings within the immigration judge's decision leading to her conclusions and the fact that the record supports those conclusions that the court can make that inference. Yes. And making that inference, it's our position that there is sufficient evidence in the record to support that conclusion for some, again, similar but not exactly the same reasons as the unable and willing factor. Inability and unwillingness and acquiescence are. Not the same standard, but they certainly rely on the same facts. If that is is clear and in that regard, the immigration judge. Was able to an immigration judge is not required to make an exegesis on her conclusions, and I agree with you that this this decision is especially sparse. But nonetheless, considering the standard of review and the facts in the record that support these conclusions, it is still a decision that's sufficient under which the court can deny the petition for review. And just making sure no one has any further questions. And I'll conclude. Thank you, Your Honors. Thank you very much. And now we'll hear from Mr. Osorio. Yes, Your Honor. Ben Osorio, also for the petitioner with Ms. Williams. So quickly, I would say that the court seems focused on this unable and unwilling issue. The standard is unable or unwilling. So while maybe the IJ addressed unwillingness, the steps of the Salvadorian government's taken, she definitely never addressed their ability. And we have specific evidence from the respondent and testimony, credible testimony from him and his sister and the affidavits and letters from his family members as well corroborating the events that occurred to him that show why going to the police in his situation would have been futile. That is coupled and corroborated with the country conditions evidence in the record. So this court has been very clear. You can't come in and cherry pick the evidence here when the evidence as a whole pushes you in another direction. If you go and look at the record evidence, you've got the Salvadorian president, the current Salvadorian president, who is negotiating backdoor deals with gangs and admitting that he has to do this in order to remain in control of his Salvadorian city at the time. And now the country, he's doing the same thing. So I think it's clear here that the country conditions evidence, along with the specific evidence that Hernan credibly testified to, pushes us in the unable and unwilling. And I don't see how the record evidence compels anything else but that finding. And then turning to the past persecution, one, this is a 14-year-old boy that this is happening to. You can't ignore that fact. And there's no way, you look at the IJ's decision, she clearly did not take that into consideration. She says the only time she ever notes his age is that he was 18 at the time that she was issuing the decision. That's it at the beginning. And then the board tries to do this weird fundamental change insertion into the past persecution analysis. I mean, both of these adjudicators butchered the legal standards here. I mean, that's the only reason we're before this court. So I think the government, the respondent in this case, is acknowledging that they butchered nexus, they probably butchered persecution here. Could you just elaborate on what you called the weird fundamental change argument that the BIA inserted about the age? Right. So board member Baird inserts this. He says, you know, like, oh, well, there's been a fundamental change anyway because now he's 18. That fundamental change comes only in the rebuttal of the presumption. That's where he butchered the standards. So you've got to find past persecution first, and then we'd say, okay, did the government establish that it would be reasonable for him to internally relocate, or has there been a fundamental change in circumstances? That affects the protected ground. That affects the social group. So his age has nothing to do with his social group. And in fact, his mother wrote that she had to flee the house. She's been in hiding. The sister's sending her money every two weeks, and her partner is going and getting the money. So there's been no fundamental change. And even as I wrote before the board and this court, a change of four years, like from 18 to 14, doesn't change his fear of persecution. So again, I think the legal standards at both the IJ level and the board here have been butchered. Counsel, can I ask you a question about that? I mean, and I agree that's a confusing part of the opinion. But if at best it goes to whether the issues that the government would face on rebuttal, if you establish the three required elements, and the government's conceding that they're not pressing that issue, you know, I'm not sure how much that ends up making a difference. I mean, to the extent that was utilized to support past persecution, I would agree with you that that doesn't make a lot of sense. To the extent it's related to the rebuttal issue, and that's been abandoned, I'm not sure whether we need to deal with it. But here's what I'd like to go back and ask your question really about the age issue. Because I certainly agree that neither the IJ nor the BIA articulated, you know, that a separate standard for minors. I guess my question would be if our standard of review is manifest contrary to law, is the failure to specifically address that such a manifest failure? Even though some of our sister circuits may have adopted it, we have not. And the court doesn't, you know, essentially comment on the issue at all. Well, I would say this. One, persecution is a cumulative standard, right? So we have to look at everything. So age is going to be one of those factors. And then beyond that, I would say that we're talking about facts that are not in dispute. These beatings are not in dispute. You know, anything his age at the time is not in dispute. So we're talking about a pure legal standard. So we're talking about the legal standard for persecution. That is something that this court can address de novo. And in regards to the cases that the respondent was citing, yes, some of those respondents or those applicants were younger. But some of those never suffered the physical harm that our 14-year-old did at the hands of a notorious gang armed with knives and weapons and guns. So, I mean, we're not comparing apples to apples here. So I think while we might not be asking for a bright line rule, we're asking for what the other circuits have found in age calibration. You know, we all can acknowledge that events that happen to a 4-year-old would affect differently than somebody who's 40. You know, and events that would happen to a 14-year-old would affect somebody differently than who's 30. But also, you know, I take into the Seventh Circuit's position that 16, you know, wouldn't get the same calibration that a 9-year-old would. But it has to be, again, the subjective and objective perspective of this person. What's reasonable for a 14-year-old who's being beaten in this manner to feel? And so... Can I ask another question that is a follow-up to an earlier question Judge Thacker, I think, asked and I find interesting? I don't think we have opinions to this effect, but are there decisions out there that, and maybe I'm wrong about us, I can't recall it. But are there decisions out there that death threats can be made without words? In other words, does showing up as a gang with knives and guns constitute a threat of death that would bring us under our law? Is there, are there decisions from other circuits that address whether conduct, you know, can create a threat as opposed to words? Well... ...that we've cited in our brief discuss conduct that has been bound to be persecution. And many of that never included death threats. Many of that did not include actual physical harm to them. In this case, I would put forth that he has suffered a death threat. We don't need the magic words that Judge Thacker was talking about earlier. We don't need somebody to say, you know, I'm going to kill you. I think the most notorious gang in the world showing up with... But I think Judge Cuadalbom's question was, is there, is there case law support for that sort of common sense notion? That you don't need the actual words to be threatened. I mean, again, given that persecution is viewed cumulatively and the acts have to be taken both with direct evidence and circumstantial evidence. I, I understand that Crespin says death threat. Tyrus says death threat. Hernandez, you know, Avalos continues the same thing. But at the same time, I think you have to look at the specific facts of this record in its entirety to, to arrive there. Thank you, Your Honors. Okay, yes, your time, your time is up. I appreciate that. And on behalf of the panel, we'd like to thank all three of you for your excellent arguments today in this challenging case. We appreciate it's been particularly challenging given the technology and the times that we're in. But thank you. And thank you. Court will stand adjourned now. Thank you. Thank you. Thank you.
judges: Stephanie D. Thacker, A. Marvin Quattlebaum Jr., Allison J. Rushing